IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CSFB 1998-C2 TX FACILITIES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  3:14-cv-4142 |
| | § | |
| WALTER W. RECTOR and | § | |
| SHIRLEY RECTOR; | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Shirley Rector's Motion to Dismiss for Lack of Personal Jurisdiction and Alternative Motion to Transfer Venue [Docket Entry #5].  For the reasons stated herein, the Motions are **DENIED**.

**FACTS AND PROCEDURAL BACKGROUND**

Plaintiff CSFB 1998-C2 TX Facilities, LLC ("Plaintiff") brings this action against Defendants Walter W. Rector ("Mr. Rector") and Mr. Rector's wife, Shirley ("Mrs. Rector"), to recover on a guaranty executed by Mr. and Mrs. Rector in Arizona in 2005. The relevant events that gave rise to the guaranty and this suit are described below.

Plaintiff is a Texas domestic limited liability company.[1]  Mrs. Rector claims that Plaintiff is a Texas resident that is managed by a non-member, LNR Partners, LLC, also a

---

[1] Docket Entry #1-3 (Pl. Orig. Pet.) ¶ 3; Pl. App. 1 ¶ 2 (Aff. of Kevin Coscia).  By "domestic," the Court assumes Plaintiff is an entity "formed under [the Texas Business Organizations Code ("TBOC")]" or Plaintiff's "internal affairs are governed by [the TBOC]."  *See* Tex. Bus. Orgs. Code § 1.002(17) (defining "domestic" under the TBOC).

1

Texas limited liability company, based in Miami, Florida.[2] The Rectors are residents of Arizona.[3]

On or about September 9, 1998, Midstar Properties, Ltd. ("Midstar Properties"), a Texas limited partnership, executed a "Deed of Trust Note," payable to Credit Suisse First Boston Mortgage LLC ("Credit Suisse") for a $37 million principal loan, plus interest, to acquire and operate two properties in Dallas County, Texas and a property in Tarrant County, Texas (collectively, "the Trust Property").[4] The Deed of Trust Note was secured by the "Deed of Trust, Assignment of Leases and Rents and Security Agreement" ("the Security Instrument"), which was recorded in Dallas County and Tarrant County.[5] The Court will refer to the Deed of Trust Note and Security Instrument collectively as the "Loan Documents." On November 25, 2002, Credit Suisse assigned its rights in the Loan Documents to JP Morgan Chase Bank ("JP Morgan").[6]

On May 13, 2005, Midstar Properties sold the Trust Property to Bromont Pavilion Midstar Master, L.P., a Delaware limited partnership ("Bromont Pavilion").[7] Mr. Rector operated the Trust Property as an employee of Bromont Pavilion.[8] In connection with the sale to Bromont Pavilion, JP Morgan required Mr. and Mrs. Rector to execute and deliver a guaranty, and they did so on May 13, 2005, obligating themselves to unconditionally guarantee full payment and performance of the obligations contained in the guaranty,

---

[2] Def. Br in Support ¶ 17; Pl. App. 1 ¶ 2.
[3] Docket Entry #1-3 ¶¶ 4–5.
[4] *Id.* ¶ 8.
[5] *Id.* ¶ 9.
[6] *Id.* ¶ 11.
[7] *Id.* ¶ 13.
[8] Docket Entry #1-3 ¶ ¶ 4; Pl. Resp. Br. ¶ 14.

including, but not limited to, repayment to JP Morgan of $1.6 million owed under the Loan Documents.[9]

JP Morgan was required by the guaranty to first exercise its remedies against the Trust Property, after which it could recover a portion of any deficiency, not exceeding $1.6 million, from Mr. and Mrs. Rector.[10] The guaranty also contained a Texas choice-of-law provision, which stated that the guaranty "shall be governed by and construed in accordance with the laws in the State in which the real property encumbered by the Deed [of] Trust is located and the applicable laws of the United States of America."[11]

On March 4, 2011, JP Morgan assigned the Loan Documents to Bank of New York Mellon Trust Company, N.A., a National Banking Association, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1998-C2 ("BNYMT").[12] On April 2, 2014, BNYMT assigned the Loan Documents to Plaintiff.[13] All of the assignments were recorded in Dallas and Tarrant Counties, Texas.[14]

On August 20, 2013, Bromont Pavilion and the Rectors were given notice of default and a demand for full payment, because Bromont Pavilion had not made certain installment payments required by the Loan Documents.[15] Bromont Pavilion and the Rectors did not pay the amounts then due.[16] On April 15, 2014, Plaintiff notified Bromont Pavilion and the Rectors that the Trust Property would be sold at a non-judicial

---

[9] *Id.* ¶ 14.
[10] *Id.*
[11] Pl. App. 135.
[12] *Id.* ¶ 15.
[13] *Id.* ¶ 16.
[14] *Id.* ¶¶ 11, 13, 15, 16.
[15] *Id.* ¶ 18.
[16] *Id.* ¶ 19.

foreclosure sale, which ultimately occurred on July 1, 2014.[17]  Plaintiff alleges that after the sale it is owed a deficiency of $17.869 million, plus interest that has accrued since July 1, 2014, $1.6 million of which is owed by the Rectors pursuant to the guaranty.[18]

On October 21, 2014, Plaintiff filed suit against Mr. and Mrs. Rector in Dallas County, Texas, seeking to recover $1.6 million under the guaranty, plus interest.[19]  Mrs. Rector filed a Special Appearance, and subject thereto, a Motion to Dismiss, and Answer, in which she claimed she was entitled to an offset against the asserted deficiency under Section 51.003 of the Texas Property Code.[20]

On November 20, 2014, Mr. and Mrs. Rector removed the suit to this Court.[21]  Thereafter, Mrs. Rector filed a Motion to Dismiss for Lack of Personal Jurisdiction and an Alternative Motion to Transfer Venue, arguing that she lacks sufficient minimum contacts with Texas for this Court to exercise personal jurisdiction over her.[22]  Plaintiff then filed its Response, and Mrs. Rector filed her Reply on January 5, 2015.[23]

## RULE 12(b)(2) LEGAL STANDARD

A court may properly exercise personal jurisdiction over a non-resident defendant when (1) the defendant is subject to personal jurisdiction under the laws of the state in which the federal court sits; and (2) the exercise of jurisdiction comports with the Due Process Clause of the United States Constitution.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–74 (1985).  The Texas long-arm statute authorizes personal jurisdiction

---

[17] *Id.* ¶ 19, 21.
[18] *Id.* ¶ 22.
[19] *See generally* Docket Entry #1-3.
[20] *Id.* at 138 ¶ 23.
[21] Docket Entry #1.
[22] Docket Entry # 6.
[23] Docket Entry # 8; Docket Entry #10.

4

over a non-resident defendant to the extent permissible under the Due Process Clause. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (citing Tex. Civ. Prac. & Rem. Code § 17.041). "Exercising personal jurisdiction over a nonresident defendant is compatible with due process when (1) that defendant has purposefully availed [herself] of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine Corp. v. Potomac Electric Power Co.,* 253 F.3d 865, 867 (5th Cir. 2001) (per curiam).

A non-resident defendant has sufficient minimum contacts with the forum state when she "purposefully avails [herself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The defendant's availing activities must be such that she "should reasonably anticipate being haled into court" in the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Minimum contacts may give rise to general or specific jurisdiction. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999). On the other hand, "[f]or the court properly to assert specific personal jurisdiction, the defendant must have 'purposefully directed' [her] activities at residents of the forum, and the litigation must result from alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum." *Archer & White, Inc. v. Tishler*, No.

5

3:03–CV–0742–D, 2003 WL 22456806, at *2 (N.D. Tex. Oct. 23, 2003) (Fitzwater, J.) (citing *Burger King Corp.*, 471 U.S. at 472).

"A single act by the defendant directed at the forum state can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted, [but] entering into a contract with an out-of-state party, without more, is not sufficient to establish minimum contacts." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Rather, "a court must evaluate 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . .'" *Id.* (citing *Burger King Corp.*, 471 U.S. at 479).

It is the plaintiff's burden to establish minimum contacts. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989). Unless the court conducts an evidentiary hearing, the plaintiff need only make a prima facie case that personal jurisdiction is proper. *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003). The court must accept as true uncontroverted factual allegations in the complaint and resolve all factual disputes in the parties' affidavits in favor of the plaintiff. *Alpine View Co. Ltd. v. Atlas Copso AB*, 205 F.3d 208, 215 (5th Cir. 2000). However, the court is not to credit uncontroverted conclusory allegations. *Panda Brandywine Corp.*, 253 F.3d at 869.

## ANALYSIS

### I.  Minimum Contacts

The Court will limit its analysis to specific jurisdiction because Plaintiff does not dispute that Mrs. Rector lacks the necessary "continuous and systematic" contacts with Texas to be subject to general jurisdiction in this forum.

Plaintiff alleges that Mrs. Rector has sufficient minimum contacts with Texas because her contacts with the forum give rise to the claims in this action. Specifically, Plaintiff argues that Mrs. Rector executed the guaranty to ensure payment of a loan on three Texas properties, and that in entering into that transaction, Mrs. Rector availed herself of the benefits and protections of Texas law. Plaintiff further contends that the *quality*, not the *quantity*, of Mrs. Rector's contacts with Texas is controlling, and that her execution of a broad guaranty with a Texas choice-of-law provision is sufficient to bring Mrs. Rector within this Court's specific jurisdiction.

The Court agrees, and finds that Mrs. Rector's execution of the guaranty to facilitate the purchase of three Texas properties, coupled with the guaranty's expansive scope and inclusion of a Texas choice-of-law clause, is sufficient to establish the necessary minimum contacts for specific jurisdiction. Mrs. Rector's contacts with Texas are the very contacts that give rise to this suit.

In *Marathon Metallic Building. Co. v. Mountain Empire Construction Co.*, the Fifth Circuit found the court had specific jurisdiction over the out-of-state resident, Ginther, as a result of his having entered into a broad guaranty relating to a business transaction with Marathon, a Texas company in the business of manufacturing and selling prefabricated buildings. 653 F.2d 921, 923 (5th Cir. 1981). Ginther, an officer of Mountain Empire Construction Company, a Colorado corporation, executed the guaranty and forwarded it to Texas, after which Mountain Empire and Marathon entered into a contract governing Mountain Empire's distribution of Marathon's products in Colorado. *Id.* The contract between Mountain Empire and Marathon included a Texas choice-of-law clause and provided for the delivery of goods f.o.b. Houston.

Marathon filed suit against Ginther, who moved to dismiss the suit for lack of personal jurisdiction. The Fifth Circuit found the minimum contacts were present because Ginther, a corporate officer, director, and shareholder of Mountain Empire, issued the guaranty to Marathon, which was described in the guaranty as being based in Houston, Texas. *Id.* at 923. The Court explained that the guaranty plainly contemplated credit advances to Mountain Empire from Texas, and title to the goods was taken in Texas. *Id.* The foregoing had the cumulative effect of making Texas a reasonably foreseeable forum to Ginther. *Id.*

In *Bank of America v. Weiss*, the court found that loan documents relating to Texas property, which included a guaranty and Texas choice-of-law provision, should have alerted the guarantor defendant that she would potentially be sued in Texas. No. 4:10-CV-283-A, 2010 U.S. Dist. LEXIS 107971, at *10 (N.D. Tex. Oct. 8, 2010). The court found the guarantor defendant waived certain benefits and protections otherwise available under Texas law when she executed the guaranty, which should have further alerted her that she would be subject to litigation in Texas. *Id.* at 10–11.

Like the guarantor defendants in *Marathon* and *Weiss*, Mrs. Rector entered into a broad guaranty, with a Texas choice-of-law provision, to enable a business entity—Bromont Pavilion—to do business in Texas. The guaranty itself, including its Texas choice-of-law provision, and acknowledgement that the Trust Property consisted of "certain real property situated in Tarrant and Dallas Counties," should have alerted Mrs. Rector that she would be subject to suit in Texas.[24] The obligations guaranteed by Mrs.

---

[24] Pl. App. 125.

Rector describe her potential liability for claims relating to the Trust Property.[25] It should have been foreseeable to Mrs. Rector that she might be required to litigate such claims in Texas, where the Trust Property was located.

The guaranty in *Weiss* is startlingly similar to that at issue here. The guaranty here and *Weiss* guaranty read:

> Guarantors hereby, jointly and severally, irrevocably and unconditionally guarantee to Lender and its successor and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, by lapse of time, by acceleration of maturity or otherwise. Guarantors hereby, jointly and severally, irrevocably and unconditionally covenant and agree that they are liable for the Guaranteed Obligations, each as primary obligor.[26] (The guaranty ¶ 1.01).

> Guarantor hereby irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the "Guaranteed Obligations" (as herein defined) . . . .

*Weiss*, 2010 U.S. Dist. LEXIS 107971, at *4. The guaranty in *Weiss* and the guaranty executed by Mrs. Rector also contain identical "nature of guaranty" clauses, which describe the guaranties as "irrevocable, absolute, continuing guaranty of payment and performance and not a guaranty of collection."[27] Finally, the "Governing Law" provisions are also similar. The *Weiss* guaranty states:

> This guaranty shall be governed by and construed in accordance with the laws of the State in which the real property encumbered by the Security Instrument is located . . . .

The instant guaranty states:

---

[25] *See* Pl. App. 125–127 ¶ 1.02 (describing potential liability for intentional waste, misappropriation of personal property from the Trust Property, conversion of insurance proceeds paid by reason of any damage relating to the Trust Property, and failure to remit security deposits collected with respect to the Trust Property).
[26] Pl. App. 126.
[27] *Compare Weiss*, 2010 U.S. Dist. LEXIS 107921, at *5, *with* Pl. App. 127 ¶ 1.03.

9

> This guaranty shall be governed by and construed in accordance with the laws of the State in which the real property encumbered by the Deed of Trust is located and the applicable laws of the United States of America.[28] (The guaranty ¶ 5.03).

The Court finds that, like the guaranties in *Weiss* and *Marathon*, the guaranty executed by Mrs. Rector should have alerted her that she might need to defend a lawsuit in Texas related to the guaranty, and it is not unfair to require her to do so.

Mrs. Rector notes that, unlike the guarantor defendants in *Marathon* and *Weiss*, she was not an officer or shareholder in the principal, Bromont Pavilion. However, her husband operated the Trust Property on behalf of Bromont Pavilion, which, in the Court's view, makes Texas a sufficiently foreseeable forum for Mrs. Rector. When Mrs. Rector executed a personal guaranty that facilitated her husband's business in Texas, she "engaged in personal and affirmative action that resulted in, at the least, a minimum contact with Texas." *See Marathon*, 653 F.2d at 923.

Mrs. Rector also notes that she and her husband executed their guaranty in Arizona, JP Morgan, a North Carolina bank, facilitated the transaction, and Plaintiff is managed by LNR Partners, a Miami-based entity. She argues that the only connection to Texas is the Trust Property, which is located in Texas.

Mrs. Rector, in effect, concedes the point—the essence of this dispute is the breach of the guaranty, which she voluntarily entered into knowi.ng it related to Texas properties and had a Texas choice-of-law clause. The residency of other parties does not factor into the analysis of whether she has sufficient contacts to be sued here.[29]

---

[28] Pl. App. 135.
[29] Each of the authorities relied on by Mrs. Rector is distinguishable as not involving a guaranty relating to real property in the forum state, which is the contact on which this Court principally relies. *See Credit Commercial De France, S.A. v. Morales*, 195 S.W.3d 209, 220–22 (Tex. App.—San Antonio 2006, pet. denied) (holding there was no specific

10

## II. Traditional Notions of Fair Play and Substantial Justice

"Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). If minimum contacts have been established, the defendant must make a "compelling case" that an exercise of jurisdiction would offend "traditional notions of fair play and substantial justice." *Burger King Corp.*, 471 U.S. at 477. "It is rare to say the assertion is unfair after minimum contacts have been shown." *Wien Air Alaska, Inc.*, 195 F.3d at 215 (citation omitted).

"In determining whether the standard has been met, courts are to consider (1) the burden on the defendant having to litigate in the forum, (2) the forum state's interests in the lawsuit, (3) the plaintiff's interests in convenience and effective relief, (3) the judicial system's interest in efficient resolution, and (4) the state's interest in furthering fundamental social policies." *Fairchild v. Barot*, 946 F. Supp. 2d 573, 581 (N.D. Tex. 2013) (Lynn, J.).

For reasons already discussed as part of the minimum contacts analysis, the Court is not persuaded that it would be unjust or unfair to subject Mrs. Rector to personal jurisdiction in Texas. The burdens imposed by travel to and from a forum are not enough, standing alone, to make the exercise of specific jurisdiction unreasonable. *See Auto Wax Co., Inc. v. Marchese*, No. 3:01-CV-2571-M, 2002 WL 1558376, at *18–19

---

jurisdiction over foreign defendants who entered into a repurchase agreement with a Texas corporation that called for performance in France); *Gustafson v. Provider Healthnet Servs., Inc.*, 118 S.W.3d 479, 481 (Tex. App.—Dallas 2003, no pet.) (holding there was no specific jurisdiction over a Michigan employee who breached a confidentiality agreement with a Texas-based company); *Reyes v. Marine Drilling Cos.*, 944 S.W.2d 401, 404 (Tex. App.—Houston [14th Dist.] 1997, no writ) (finding a personal injury defendant lacked minimum contacts with Texas because there was no evidence the negligence occurred in Texas).

(N.D. Tex. July 15, 2002). Furthermore, Texas has more than an attenuated interest in the outcome of this case. The Trust Property is located in Texas, Texas law governs the guaranty pursuant to a Texas choice-of-law provision, and Mrs. Rector has requested an offset under the Texas Property Code.

## MOTION TO TRANSFER VENUE

Alternatively, Mrs. Rector asks the Court to transfer this action to the District of Arizona, where she resides. Although the District of Arizona would be a more convenient venue for Mrs. Rector, it is not a more convenient venue for this lawsuit, and therefore, Mrs. Rector's Alternative Motion to Transfer Venue is **DENIED**.

### I. Legal Standard

The Court may, "[f]or the convenience of the parties and witnesses" and in "the interest of justice," transfer the case to any district in which the case could have been brought under 28 U.S.C. § 1391. 28 U.S.C. § 1404(a). The Court has broad discretion in determining whether to transfer. *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 311 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). The Fifth Circuit requires courts to consider a variety of public and private factors in making the decision to transfer. *Action Indus., Inc. v. U.S. Fid. & Guar. Co.,* 358 F.3d 337, 340 (5th Cir. 2004).

The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having

localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*  The Fifth Circuit has explained that a plaintiff's choice of venue is not determinative in the analysis, but the plaintiff's choice of venue should be respected if the transferee venue is not clearly more convenient. *Volkswagen II*, 545 F.3d at 314–15.

## II.  Analysis

Plaintiff does not dispute that this suit could have been brought in the District of Arizona, which satisfies the requirement of 28 U.S.C. § 1404(a).

### A.  Private Interest Factors

#### 1.  Relative Ease of Access to Sources of Proof

Mrs. Rector argues that evidence will be more accessible and less expensive to obtain in Arizona, where the guaranty was executed, and where she and her husband reside.  Plaintiff responds that none of the sources of proof are located in Arizona. Plaintiff notes that the Trust Property is in Texas, the foreclosure was conducted in Texas, and the foreclosure paperwork is in Texas.  Finally, Plaintiff argues that Mrs. Rector and her husband have raised a defense of offset that requires a determination of the fair market value of the Trust Property under the Texas Property Code. *See* Tex. Prop. Code § 51.003.  The evidence relating to such a determination would all be in Texas, where the Trust Property is located.

The Court finds that this factor weighs against transfer.  Although two significant witnesses, the Rectors, are in Arizona, Mrs. Rector has failed to identify any specific documentary evidence that is more easily accessible in Arizona.  In contrast, Plaintiff has

13

identified documents in Texas associated with the Texas foreclosure that will likely be necessary to determine the fair market value of the Trust Property.  Plaintiff also points out that expert testimony may be necessary to establish the fair market value of the Trust Property, and an appraiser will likely reside in Texas.  In the Court's view, the documents and expert testimony will be the most relevant proof, and will be easier to access in Texas.

### 2. Availability of Compulsory Process

Mrs. Rector does not identify any potential witnesses to be subpoenaed in this action, thus the issue of compelling third-party witnesses to appear in Texas does not support transfer.  *See Magana v. Toyota Motor Corp.*, No. 3:10-CV-1451-B, 2010 WL 5108850, at *2 (N.D. Tex. Dec. 6, 2010 ("The party seeking the transfer must specify clearly . . . the key witnesses to be called and their location and must make a general statement of what their testimony will cover.").

### 3. Cost of Attendance for Willing Witnesses

Mrs. Rector argues that requiring her to litigate in Texas will increase her attorney fees and costs.  On the other hand, Plaintiff, a Texas limited liability company managed by another Texas limited liability company headquartered in Miami, will be engaging in out-of-state litigation whether this action is in Texas or Arizona.  Plaintiff responds that any potential expert witness regarding the fair market value of the Trust Property will likely be in Texas, where the Trust Property is located.  Furthermore, Plaintiff presents evidence that it is cheaper and more convenient for its witnesses to travel from Miami to Dallas than from Miami to Phoenix because the former route has more flights at cheaper rates.  *See* Pl. App. 139–53.

The Court finds that the cost of attendance of willing witnesses weighs against transfer because, again, Mrs. Rector has only identified herself and Mr. Rector as witnesses who will be financially inconvenienced by keeping this action in Texas. Although it is true that Plaintiff's witnesses will need to travel out-of-state, that travel will be shorter and less expensive if this action remains in Texas. In short, transferring this suit to Arizona will only shift the financial burden and inconvenience from Defendants to Plaintiff, and Plaintiff has identified third-party witnesses—appraisers of the Trust Property—that will likely be in Texas. Therefore, this factor weighs against transfer.

### 4. Other Practical Problems

This factor is neutral because the parties have not briefed any additional practical problems that do not otherwise fall within one of the other private or public factor categories.

## B. Public Interest Factors

### 1. Court Congestion

Mrs. Rector does not address this factor, and Plaintiff provides evidence that the average time to dispose of civil cases in the Northern District of Texas is 6.4 months, while the average time to disposition in Arizona is 7.7 months. Because Mrs. Rector has not shown that trial will be speedier in Arizona, this factor weighs against transfer. *See In re Genetech, Inc.*, 556 F.3d 1338, 1347 (5th Cir. 2009).

### 2. Local Interest

Mrs. Rector argues that Arizona has a strong interest in protecting the rights of its citizens. However, Plaintiff argues that Texas has an even greater interest in enforcing

the offset provision under the Texas Property Code and adjudicating rights relating to real property located in Texas. The Court agrees. This forum has a sufficiently strong interest in deciding this dispute concerning the guaranty, which is governed by Texas law and relates to Texas property. This factor weighs against transfer.

### 3. Familiarity with Forum Law and Avoiding Problems of Conflict of Laws

Mrs. Rector does not address this factor. Because the choice-of-law provision in the guaranty provides that Texas law applies to this dispute, the Court finds it unlikely that a choice-of-law issue will arise in either forum. However, this Court no doubt has a greater familiarity with Texas law than does an Arizona court. Thus, this factor weighs against transfer.

Because the balance of public and private factors weigh against transfer, the Court will not transfer this action to the District of Arizona under the 28 U.S.C. §1404(a) factors.

### CONCLUSION

For the reasons provided herein, the Court **DENIES** Defendant Shirley Rector's Motion to Dismiss and **DENIES** Defendant Shirley Rector's Alternative Motion to Transfer Venue.

**SO ORDERED.**

March 5, 2015.

*[signature]*
**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**

16