**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| CSFB1998-C2 TX FACILITIES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:14-cv-4142-M |
| | § | |
| WALTER W. RECTOR and SHIRLEY RECTOR, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a Motion for Summary Judgment [Docket Entry #20] filed by Plaintiff CSFB 1998-C2 TX Facilities, LLC. For the following reasons, Plaintiff's Motion is GRANTED.

I. Background

This is a suit on a guaranty brought by Plaintiff against Walter W. Rector and Shirley Rector ("Defendants"). On or about September 9, 1998, Midstar Properties, Ltd. ("Midstar") obtained a $37 million loan (the "Loan") from Credit Suisse First Boston Mortgage Capital LLC, ("CS First Boston Mortgage Capital") for the acquisition and operation of three commercial properties located in North Texas (the "Property"). Pl. MSJ App. [Docket Entry #22] at 2, ¶ 4. Six and a half years later, on May 13, 2005, Midstar sold the Property to Bromont Pavilion Midstar Master, L.P. ("Bromont"), and Bromont assumed Midstar's obligations on the Loan. *See id*. at 4, ¶ 8. In connection with the sale of the Property to Bromont, Defendants executed a Guaranty, pursuant to which they obligated themselves to guarantee full payment and performance of various "Guaranteed Obligations," including the repayment of not more than $1.6 million of the indebtedness owed on the Loan. *See id.* at 4, ¶¶ 8-9; *see also id*. at 146-59. The Guaranty provides

that, before the owner and holder of the Loan can recover on the Guaranty, it must exercise its remedies against the Property, and then, to the extent a deficiency exists, it may recover a portion of the deficiency, not exceeding $1.6 million, from Defendants. *Id.* at 148. Plaintiff is the current owner and holder of the Loan and beneficiary of the Guaranty. *Id.* at 5, ¶ 12.

In or around August 2013, Bromont failed to make certain installment payments due and owing on the Loan. *Id.* at 7, ¶16. Plaintiff provided Bromont and Defendants notice of the default and initiated foreclosure proceedings against the Property. *Id.*, ¶ 17. Ultimately, the Property was sold at separate non-judicial foreclosure sales held on July 1, 2014. *Id.* at 8, ¶ 21. Plaintiff contends that, following the foreclosure sales, a deficiency of more than $17.8 million remains owing on the Loan. *Id*. Plaintiff thus made a demand on Defendants for $1.6 million of the deficiency under the terms of the Guaranty. When Defendants refused to pay, Plaintiffs filed this suit in state court. *Id*., ¶ 22. Defendants removed the suit to federal court on November 20, 2014.

Defendants dispute their liability under the Guaranty. They contend that, pursuant to Section 51.003 of the Texas Property Code, they are entitled to a judicial determination of the fair market value of the Property purchased at foreclosure and an offset against the deficiency claimed by Plaintiff in an amount by which the fair market value of the Property exceeds the price paid at foreclosure. Plaintiff asserts that Defendants waived their rights under Section 51.003 to a fair market determination and any potential offset. Plaintiff has filed a motion for summary judgment on its claim for breach of the Guaranty and Defendants' affirmative defense under Section 51.003. The issues have been fully briefed, and the motion is ripe for determination.

## II. Legal Standards

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56. A dispute as to a material fact is genuine, if the evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party. *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997). A fact is material if its resolution could affect the outcome of the action. *Weeks Marine, Inc. v. Fireman's Fund Ins. Co*., 340 F.3d 233, 235 (5th Cir. 2003). The substantive law determines which facts are material. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).

A party seeking summary judgment who does not have the burden of proof at trial need only point to the absence of admissible evidence to support the nonmovant's claim. *See Duffy v. Leading Edge Prods., Inc*., 44 F.3d 308, 312 (5th Cir. 1995). Once the movant meets its initial burden, the burden shifts to the nonmoving party to produce evidence or designate specific facts in the record showing the existence of a genuine issue for trial. *See Fordoche, Inc. v. Texaco, Inc*., 463 F.3d 388, 392 (5th Cir. 2006). By contrast, a movant who bears the burden of proof at trial must establish "beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). The "beyond peradventure" standard is a "heavy" burden. *See Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 923-24 (N.D. Tex. 2009).

## III. Analysis

### a. Preliminary Matters

Plaintiff objects to certain evidence filed in support of Defendants' response to the summary judgment motion, including portions of each Defendant's declaration. Specifically, Plaintiff objects that Defendants' statements concerning their subjective intent and Shirley Rector's lack of sophistication are irrelevant. *See* Pl. Obj. [Docket Entry #38] at 1, 3 (raising objections to paragraphs 7-8 of Walter Rector's declaration and paragraphs 3-9 of Shirley

Rector's declaration). Plaintiff further objects that Walter Rector's statements concerning a purported letter of intent to purchase the Property prior to foreclosure are hearsay and not based on personal knowledge. *See id.* (objecting to paragraphs 1-3 of Walter Rector's declaration). Because it would reach the same decision whether or not it considered the allegedly incompetent summary judgment evidence, the Court overrules Plaintiff's objections as moot.

b. Suit on Guaranty

To prevail on its claim for breach of the Guaranty, Plaintiff must establish (1) the existence and ownership of the guaranty contract; (2) the terms of the underlying contract secured by the guaranty; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform the promise by the guarantor. *Lee v. Martin Marietta Materials Sw., Ltd.*, 141 S.W.3d 719, 720 (Tex. App.--San Antonio 2004, no pet.). Here, the undisputed summary judgment evidence establishes that, on or about September 9, 1998, CS First Boston Mortgage Capital made the original $37 million Loan to Midstar, in connection with Midstar's acquisition of the Property. Pl. MSJ App. 2, ¶ 4. The Loan was evidenced by a Deed of Trust Note (the "Note") executed by Midstar and payable to CS First Boston Mortgage Capital, which, in turn, was secured by a Deed of Trust, Assignment of Leases and Rents and Security Agreement ("the Security Instrument") that was duly recorded in the official public records of Dallas County and Tarrant County, Texas (the Note and Security Instrument collectively called the "Loan Documents"). *Id*. at 2-3, ¶¶ 4-5; *see also id.* at 10-26 & 27-107. On or about November 25, 2002, CS First Boston Mortgage Capital assigned the Loan and Loan Documents to JPMorgan Chase Bank ("JPMC Bank"), formerly known as the Chase Manhattan Bank, as Trustee for the Registered Holders of the Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates, Series 1998-C2, pursuant to a written Assignment of

Assignment of Leases and Rents that was recorded in the official public records of both Dallas and Tarrant counties.[1] *See id.* at 3, ¶ 6; *see also id.* at 108-111. The assignment was also evidenced by an allonge to the Note. *See id.* at 3, ¶ 6; *see also id*. at 25.

On or about May 13, 2005, Midstar sold the Property to Bromont, and Bromont assumed Midstar's obligations on the Loan, pursuant to a Note and Deed of Trust Assumption Agreement that was recorded in the official public records of Dallas County and Tarrant County. *See id*. at 4, ¶ 8; *see also id.* at 117-145. In connection with the assumption of the Loan by Bromont, Defendants executed and delivered the Guaranty to JPMC Bank. *See id*. at 4, ¶ 9; *see also id.* at 146-159. The Guaranty provides that Defendants, jointly and severally, unconditionally guarantee the payment and performance of the "Guaranteed Obligations," which, as defined in the Guaranty, include, but are not limited to, the repayment of not more than $1.6 million of the indebtedness owing on the Loan Documents. *See id.* at 147, §1.01 & 148, § 1.02.B. The Guaranty requires, however, that before the lender may seek to recover any part of the indebtedness from Defendants, the lender must first exercise its remedies against the Property, and there must be a deficiency remaining in the payment of the indebtedness. *See id.*

On or about March 4, 2011, JPMC Bank assigned the Loan Documents to The Bank of New York Mellon Trust Company, N.A., a National Banking Association ("BONYM"), as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1998-C2, pursuant to a written Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement and Other Loan Documents that was recorded in the official public records of both Dallas and Tarrant counties. *See id*. at 4-5,

[1] On or about February 18, 2014, CS First Boston Mortgage Capital and JPMC Bank executed a Corrective Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement to correct the recording information contained in the First Assignment. *See id.* at 3-4, ¶ 7; *see also id*. at 112-116. The Corrective Assignment was also recorded in the official public records of Dallas County and Tarrant County, Texas.

¶ 10; *see also id.* at 160-164. On or about April 2, 2014, BONYM assigned the Loan Documents to Plaintiff pursuant to a written Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement and Other Loan Documents that was recorded in the official public records of Dallas County and Tarrant County. *See id*. at 5, ¶ 11; *see also id.* at 165-173. The assignment from BONYM to Plaintiff was also evidenced by another allonge to the Note. *See id.* at 5, ¶ 11; *see also id.* at 26. Pursuant to the Assignment from BONYM to Plaintiff and the allonges to the Note, Plaintiff is the current owner and holder of the Note and beneficiary of the Guaranty.

Bromont defaulted on the Loan by failing to pay when due certain installments pursuant to the terms of the Loan Documents. *See id.* at 7, ¶ 15. As a result, by letter dated August 20, 2013, Plaintiff gave Bromont and Defendants (1) notice that a default had occurred under the Loan Documents; (2) notice that the entire outstanding principal indebtedness was fully due and payable; and (3) notice that demand was being made upon Bromont and Defendants for the immediate payment of the entire outstanding principal and interest balance due and owing under the Loan Documents. *See id.* at 7, ¶ 16; *see also id.* at 205-208. Plaintiff made several additional written demands on Bromont and Defendants for payment of the amounts due under the Loan Documents and provided notice to Bromont and Defendants that the Property would be sold at a non-judicial foreclosure sale. *See id.* at 7-8, ¶¶ 17-19; *see also id*. at 209-226, 227-244, 245-58. Despite the multiple notices and demands, Bromont and Defendants failed and refused to pay the amounts due and owing under the Loan Documents. *See id*. at 8, ¶ 20. As a result of Bromont's default, the Property was sold at separate non-judicial foreclosure sales held in Dallas County and Tarrant County on July 1, 2014 (the "Foreclosure"). *See id*. at 8, ¶ 21. Plaintiff contends that, after applying all applicable credits, offsets, or payments to the outstanding balance of the Note, the amount due and owing to Plaintiff as of July 1, 2014, was approximately $17,896,000.00 (the

"Deficiency"). *See id.*; *see also id.* at 174-204. Additionally, interest has been accruing, and continues to accrue, on the Deficiency. *See id*. at 14, § 5. Under the terms of the Guaranty, Defendants are liable for the repayment of $1.6 million of any deficiency, plus Plaintiff's attorney's fees and court costs. S*ee id*. at 148, § 1.6.B & 150, § 1.08. Plaintiff has made demands upon Defendants to pay the alleged Deficiency pursuant to the terms of the Guaranty, but Defendants have failed and refused to do so. *See id*. at 8, 22.

Defendants admit that Bromont purchased the Property and assumed the Loan from Midstar in May 2005 and, in connection with that transaction, that they executed and delivered the Guaranty to JPMC Bank. *See* Def. Ans. to Am. Compl. at 2, ¶¶ 12-14. They further admit that Plaintiff is the current owner and holder of the Note and the beneficiary of the Guaranty. *See id*., ¶ 18. Defendants also admit that Bromont defaulted on the Loan by failing to pay certain installments due under the terms of the Loan Documents, that Plaintiff made several demands on Bromont and Defendants for payment of the outstanding balance due on the Loan, and that Plaintiff provided notice that the Property would be sold at a foreclosure sale if the default was not cured. *Id.* at 2-3, ¶¶ 19-22. Defendants do not dispute that they failed and refused to pay the amounts due and owing under the Loan Documents or that the Property was sold at foreclosure on July 1, 2014. *See id*. at 3, ¶¶ 23-24.

Plaintiff has thus established, beyond peradventure, the existence and its ownership of the Guaranty, as well as the terms of the Guaranty. It has also established the occurrence of the conditions upon which Defendants' liability under the Guaranty may be based; namely that, (1) Bromont defaulted on the Loan; (2) Plaintiff foreclosed on the Property; (3) a deficiency is owing on the Loan after the Foreclosure; and (4) Defendants refuse to pay $1.6 million under the terms of the Guaranty to reduce the Deficiency. Accordingly, Plaintiff is entitled to summary judgment

on its claim for breach of the Guaranty.

c. Waiver

Defendants argue that, notwithstanding their breach of the Guaranty, they are entitled to an offset against any deficiency claimed by Plaintiff, pursuant to Section 51.003 of the Texas Property Code. Section 51.003 provides that when real property is sold at a foreclosure sale pursuant to a power of sale conferred by a deed of trust or other contract lien and the foreclosure sales price is less than the debt secured, a suit brought against the borrower, or other person obligated on the indebtedness, for "the unpaid balance of the indebtedness secured by the real property" is a suit for a deficiency judgment. *See* Tex. Prop. Code § 51.003(a); *see also PlainsCapital Bank v. Martin*, 459 S.W.3d 550, 555 (Tex. 2015). In such a situation, the person obligated on the indebtedness may request that the trial court make a finding as to the fair market value of the property as of the date of the foreclosure sale. *Id*. § 51.003(b). If the court finds the fair market value exceeds the foreclosure sale price, then the person obligated on the indebtedness is entitled to an offset against the deficiency in the amount equal to the difference between the fair market value and the sale price. *Id*. § 51.003(c). An offset under Section 51.003 thus operates as an affirmative defense to a deficiency claim. S*ee Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 6 (Tex. 2014). Defendants have filed a motion for a fair market value determination of the Property under Section 51.003. *See* Def. Mot. [Docket Entry #46]. They contend that a fact issue exists as to the fair market value of the Property which prevents summary judgment in Plaintiff's favor. *See* Def. Resp. [Docket Entry #28] at 5.[2]

Plaintiff responds that Defendants waived their rights under Section 51.003 to a fair

[2] Defendants do not specifically allege that the fair market value of the Property exceeded the foreclosure price, but they do submit Walter Rector's declaration, which states that he is aware of at least one offer to purchase the Property for the amount of the outstanding principal on the Loan. *See* Def. Resp. App. at 4, ¶ 3.

market value determination and any potential offset. Specifically, Plaintiff points to Section 1.04 of the Guaranty, which provides, in its entirety:

> **<u>Guaranteed Obligations Not Reduced by Offset</u>**. The Guaranteed Obligations and the liabilities and obligations of each Guarantor to Lender hereunder, shall not be reduced, discharged or released because or by reason of any existing or future offset, claim or defense of Borrower, or any other party, against Lender or against payment of the Guaranteed Obligations, whether such offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise.

Pl. MSJ App. at 149. Under Texas law,[3] guarantors may, by contract, waive their offset rights under Section 51.003. *Moayedi*, 438 S.W.3d at 6. To be effective, the waiver must be "clear and specific." *Id.* The Texas Supreme Court has held that that language waiving "any," "each," and "every" defense is sufficiently specific to waive offset rights under Section 51.003. *Id*. at 8. Indeed, according to the Texas Supreme Court, just because a waiver is "all encompassing" does not mean the waiver is unclear or vague. *Id*. The Fifth Circuit, applying Texas law, has specifically held that language substantially identical to that of Section 1.04 of the Guaranty is effective to waive a guarantor's rights under Section 51.003. *Hometown 2006–1 1925 Valley View, LLC v. Prime Income Asset*, 595 F. App'x 306, 309 (5th Cir. 2014). Applying established precedent to the unambiguous terms of the Guaranty, the Court finds that Defendants waived their rights under Section 51.003.

Defendants argue that, when viewed in its entirety, the Guaranty does not indicate that they clearly intended to waive their rights under Section 51.003. They first point out that Article II of the Guaranty, which describes "Events and Circumstances Not Reducing or Discharging Guarantor's Obligations," fails to specifically mention Section 51.003. Def. Resp. at 3-4. This

---

[3] A guaranty is a contract. *See McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013). In diversity cases, federal courts interpret the terms of a guaranty contract according to the substantive law of the forum state. *Id.* Accordingly, Texas law governs this dispute.

argument is unavailing, however, in light of controlling precedent that broad, "all-encompassing" waivers, like the waiver in Section 1.04, are sufficiently clear to effect a waiver of a guarantor's rights under Section 51.003. *Hometown 2006–1 1925 Valley View*, 595 F. App'x at 309.

Defendants also argue that Section 1.04 conflicts with a more specific provision of the Guaranty, Section 2.10, which states:

> **Offset**. The Note, the Guaranteed Obligations and the liabilities and obligations of the Guarantors to Lender hereunder shall not be reduced, discharged or released because of or by reason of any existing or future right of offset, claim or defense of Borrower against Lender or any other party, or against payment of the Guaranteed Obligations, whether such a right to offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise.

Pl. MSJ App. at 152. However, Section 2.10 waives any defense based on *the Borrower's* offset rights. *See id.* Guarantors have separate and independent rights of offset, which, in this case, are waived by Defendants pursuant to Section 1.04 of the Guaranty.

Further, a finding of waiver is entirely consistent with the other provisions of the Guaranty. For example, Section 2.13 provides that:

> [I]t is the unambiguous and unequivocal intent of each Guarantor that Guarantors shall be obligated to pay the Guaranteed Obligations when due, notwithstanding any occurrence, circumstance, event, action, or omission whatsoever, whether contemplated or uncontemplated, and whether or not otherwise or particularly described herein, which obligation shall be deemed satisfied only upon the full and final payment and satisfaction of the Guaranteed Obligations.

Pl. MSJ App. at 153. The Fifth Circuit found that identical language demonstrated a guarantor's intent to waive its offset rights. *Hometown 2006–1 1925 Valley View*, 595 F. App'x at 309. Contrary to Defendants' argument, Section 2.13 does not clearly limit Defendants' waiver to offsets or defenses that arose prior to the date the Guaranty was signed in 2005. *Compare Salvagio*

*v. Madison Realty Capital, L.P.*, 2012 WL 5397190, at *2 (S.D. Tex. Nov. 5, 2012) (rights under Section 51.003 to future offset not waived pursuant to forbearance agreement in which guarantors acknowledged they had no offsets, and if they did have any offsets "from the beginning of the world [through the date of execution of the forbearance agreement]" they waived them).

Finally, Shirley Rector's alleged lack of experience in commercial real estate transactions does not defeat the effect of the waiver. Under Texas law, a party who signs a contract is presumed to have read and understood its contents. *See In re Prudential Co. of Am.*, 148 S.W.3d 124, 134 (Tex. 2004). Absent proof of her own mental incapacity, or that JPMC Bank engaged in fraud or trickery, Defendants are presumed to have read and understood the Guaranty. *See id.*; *Fernandes v. Dillard's Inc.*, 997 F.Supp.2d 607, 612 (S.D. Tex. 2014).

Defendants waived their offset rights under Section 51.003 when they executed the Guaranty. Accordingly, Defendants cannot rely on their affirmative defense to delay or prevent summary judgment on Plaintiff's claim for breach of guaranty.

## IV. Conclusion

Plaintiff's motion for summary judgment [Docket Entry # 20] is GRANTED.

**SO ORDERED**.

February 16, 2016.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**